UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:08-CV-129-BO

| | |
|---|---|
| MARIANNE R. TALBOT for R.T., infant, and MARIANNE R. TALBOT, Individually<br><br>Plaintiffs,<br><br>vs.<br><br>KOHL'S DEPARTMENT STORES, INC., and KOHL'S CORPORATION<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendants, Kohl's Department Stores, Inc. and Kohl's Corporation (collectively referred to, along with Kohl's Department Stores, Inc., as "Defendants" or "Kohl's"), pursuant to Local Civil Rules 7.1-7.2, EDNC, respectfully submit this Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Plaintiff's Motion" or the "Motion") to the Court. Plaintiffs have not shown undisputed facts sufficient to support Plaintiff R.T.'s negligence claims against Defendants, and Plaintiffs' Motion should accordingly be denied.

I.     PLAINTIFFS' "UNDISPUTED FACTS" ARE ANYTHING BUT

Plaintiffs present a multitude of "undisputed" facts to the Court in support of Plaintiff's Motion. In support of these facts, which mirror the allegations of Plaintiffs' Complaint, Plaintiffs purport to cite to the deposition testimony and other discovery constituting the factual record in this matter. In fact, the majority of the relevant "undisputed" facts presented by Plaintiffs are simply not supported by Plaintiffs' citations to the record.

A. *"While at Defendants' store R.T. suffered severe injuries to his upper left hip due to dangerous conditions created by one of the store's empty metal display hooks in the children's clothing section."*

Plaintiffs' citations to the record purporting to support the statement that R.T. suffered "severe" injuries "due to dangerous conditions created by one of the store's empty metal display hooks in the children's clothing section" simply do not support this statement. In fact, the Plaintiffs severely misrepresent every citation listed in support of this "undisputed fact." The citations listed do not contain any factual support for the characterization of the empty metal display hook as "dangerous conditions," nor do they contain any objective support for the characterization of R.T.'s injury as "severe."

The citations to the deposition of Eric Stoner simply have nothing to do with a dangerous condition or even the circumstances of Plaintiff R.T.'s injury. The first citation is a discussion of a former Kohl's employee who may have been working the night of the incident, and the second citation is to a discussion about placement of the store's fixtures. (Stoner Dep. 69:13-21, 84:1-7, May 7, 2009, attached to the Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment as Exhibit "A.")

The citations to the deposition of Larissa Birkenfeld are simply to Ms. Birkenfeld's lay description of the injury suffered by R.T., and do not contain any opinion – nor is Ms. Birkenfeld qualified to give an opinion – as to the injury's cause or the condition of the store's displays. (Birkenfeld Dep. 49:17-25, 50:1-15, 51:12, June 17, 2009.)[1]

---

[1] As Plaintiffs have omitted the relevant portions of Ms. Birkenfeld's deposition from their submission to the Court, a full copy of Ms. Birkenfeld's deposition testimony is attached hereto as Exhibit "A."

Similarly, the citations to the deposition of Plaintiff Marianne Talbot provide no support for Plaintiffs' assertions. The sections cited to do not state that there were any dangerous conditions created by one of the store's empty metal display hooks, simply that R.T. fell and landed on the fixture in question. (Talbot Dep. 46:15-24, 47:1-17, June 17, 2009, attached to the Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment as Exhibit "D.") Similarly, and indicative of Plaintiffs' lack of knowledge of the record in this matter, the portions of Ms. Talbot's deposition testimony cited to do not even support the claim that the accident happened in the children's section. Defendants do not dispute the site of the incident in the store; however, it is telling that Plaintiffs cannot even establish this simple fact by citation to the record.[2]

Finally, neither the pictures of the injury nor the emergency room records contain any statements regarding the danger of the fixture, and, in fact, the emergency room records, rather than establishing that Plaintiff R.T.'s injury was severe, instead bolster Ms. Talbot's own testimony that the injury was not, in fact, severe. (Talbot Dep. 65:14-24, 66:20-71:3.)

B. *"While walking beside his mother between clothing racks, R.T. was literally impaled by a lower display hook in the children's section."*

R.T. was not walking beside his mother at the time of the accident. (Talbot Dep. 46:15-17.) He had walked away from her, and was trying to move around her cart to get back to her side. (*Id.*) In doing so, R.T. tripped on his mother's cart. (Talbot Dep. 46:15-17, 49:7-56:16, Stoner Dep. 48:3-6 ("I asked what—you know, "Is he okay? What happened?" And [Ms. Talbot] very nonchalantly said, "Oh, he was just running around and tripped on a cart and hurt himself.").) Ms. Talbot also said, immediately after the accident, that R.T. had been running and playing before he tripped. (Birkenfeld Dep. 61:12-13 ("[R.T.] was running, he was playing and

---

[2] This testimony regarding the location of the incident is located just prior to the cited testimony. (Talbot Dep. 45:21-46:8.)

tripped and fell."); Deposition of Stephanie Tayson, 86:19-22, June 17, 2009, attached to the Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment as Exhibit "C" ("I heard [Ms. Talbot] say and I don't know that it was to me, she just said, "I told him not to be running through the store".).)  There is no testimony supporting the fact that R.T. was "literally impaled" by anything; in fact, the testimony is that when he tripped over his mother's cart while he was playing, he happened to land on the fixture in such a way that Ms. Talbot had to help him up.  (Talbot Dep. 46:22-47:6)

C. *"Defendants' metal hook punctured deep into R.T.'s skin and penetrated subcutaneous tissue, nearly missing a vital organ."*

There is no evidence offered in any of Plaintiffs' citations to the record to support the claim that the injury caused when R.T. landed on the fixture "nearly missed" a vital organ. Citations to Mr. Stoner's deposition testimony simply establish that when he walked up to the customer service desk, there were not any other Kohl's employees around.  (Stoner Dep. 50:7-11.)  Similarly, Ms. Birkenfeld's testimony simply establishes that R.T. was injured – not that the injury narrowly missed a vital organ.  (Birkenfeld Dep. 49:17-25, 50:1-15, 51:12.)  Of course, Ms. Birkenfeld, an undergraduate student at the University of North Carolina at Wilmington who works 15 hours per week at Kohl's, is not qualified to render an opinion as to the location of R.T.'s injury relative to his organs.  (Birkenfeld Dep. 7:1-8:1.)  Similarly, the pictures of the injury submitted by Plaintiffs do not opine as to the laceration's proximity to the Plaintiff's organs.

D.  *"Defendants' hook display rack was the direct and proximate cause of R.T.'s injuries."*

In support of their theory of proximate causation, Plaintiffs offer a single piece of inadmissible hearsay evidence from Ms. Birkenfeld, an hourly Kohl's employee.  Ms. Birkenfeld states that "I remember somebody telling me that he fell on a fixture, but I don't remember who that person was." (Birkenfeld Dep. 56:18-20.)  This statement, made by someone other than Ms. Birkenfeld and being offered to prove the truth of the matter asserted, is not properly considered by the Court in making a determination on a motion for summary judgment. *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) ("[T]he evidence proffered … consists of inadmissible hearsay … [e]vidence of this type is neither admissible at trial nor supportive of an opposition to a motion for summary judgment.").

E.  *"At the time of the [sic] R.T.'s accident, Defendants admit they had actual and constructive notice that the display rack posed an inherent danger to its [sic] patrons."*

Plaintiffs focus on Defendants' policies requiring that all fixtures have merchandise on them as evidence of "actual and constructive notice" to Defendants that the fixture "posed an inherent danger."  The testimony offered states that empty bars are undesirable, but the only injury risk would be from not seeing and running into the empty bars. (Tayson Dep., 21:16-18, 45:7-15.)  But even if a person were to run into an empty fixture, "it can just be a bump because they're not sharp or anything. . . . I mean it wouldn't even leave a red place." (Tayson Dep. 45:11-19.)

Moreover, no evidence is offered to prove that Kohl's had any type of notice that this <u>particular</u> display rack was empty at any time before R.T.'s accident.

5

Case 7:08-cv-00129-BO    Document 64    Filed 10/01/2009    Page 5 of 14

F.  *"Defendants had exclusive dominion and control over both the placement and construction of the hook display rack."*

While Defendants do not dispute that they were in charge of the placement of the display racks throughout their store, *see* Tayson Dep. 62:19-23, Defendants did not "construct" (or in any way manufacture) the fixtures, but merely added or removed parts as needed to display the store's merchandise. (Tayson Dep. 72:22-77:8.)

G.  *"R.T. sustained permanent scarring and disfigurement as a result of his injuries sustained at Defendants' store."*

Defendants do not dispute Ms. Talbot's testimony that R.T. has a scar on his side. (Talbot Dep. 58:2-59:1) However, given Ms. Talbot's testimony regarding the injury's location, this scar is likely not visible without R.T. removing his shirt. (*Id.*) R.T. engages in the same activities now as he did before the accident. (Talbot Dep. 66:20-71:3.) The scar causes him no ongoing pain. (Talbot Dep. 103:4-8.)

H.  *"R.T. experienced severe pain and suffering as a result of his injuries sustained at Defendants' store."*

Defendants have been deprived of the best evidence of Plaintiff R.T.'s pain as a result of the accident due to his failure to attend his validly noticed deposition, which is the subject of a pending motion for sanctions. As such, the citations listed in support of this "undisputed fact" are merely speculative accounts by third-party observers, not first-hand descriptions of how R.T. actually felt. (*See* Talbot Dep. 76:2-6 ("it looked painful to me").)

> I. *"On September 7, 2007, Marianne and her eight-year-old son, R.T., were shopping in one of Defendant Kohl's department stores located at 228 Old Eastwood Road Wilmington, NC 28403."*

Finally, while Defendants do not dispute the first undisputed fact cited to by Plaintiffs – that the incident occurred on September 7, 2007 in a Kohl's store in Wilmington, NC – the deposition testimony cited by Plaintiffs similarly does not support this proposition, being instead a discussion by Ms. Talbot of who was with her, R.T.'s age, and where she went in the store. (Talbot Dep. 44:10-24.) This is symptomatic of the lack of factual support for the statements contained in Plaintiffs' purported "undisputed facts" section.

## II.  R.T. HAS NOT PROVEN A NEGLIGENCE CLAIM AGAINST DEFENDANTS

In order to recover for negligence in North Carolina, a plaintiff must "offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." *Camalier v. Jeffries*, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). For the purposes of this response, Defendants do not dispute that Plaintiffs have incurred at least nominal damages, nor do Defendants dispute that they owed Plaintiffs the following duty:

> In general, "property owners have 'the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors.' " *Goynias v. Spa Health Clubs, Inc.,* 148 N.C. App. 554, 555, 558 S.E.2d 880, 881 (quoting *Nelson v. Freeland,* 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998)), *aff'd per curiam,* 356 N.C. 290, 569 S.E.2d 648 (2002). The duty to exercise reasonable care requires that the landowner keep the premises in a reasonably safe condition and warn lawful visitors of hidden dangers or unsafe conditions that can be ascertained by reasonable inspection and supervision. *Roumillat v. Simplistic Enterp., Inc.,* 331 N.C. 57, 64, 414 S.E.2d 339, 342 (1992), *overruled in part on other grounds by Nelson v. Freeland,* 349 N.C. 615, 507 S.E.2d 882 (1998).

*Hill v. Town of Robbins*, No. COA08-890, 2009 WL 2177312, at *2 (N.C. Ct. App. July 21, 2009) (attached hereto as Exhibit "B.") However, Plaintiffs are unable to point to uncontested facts showing that Defendants have breached this duty to Plaintiffs, nor have Plaintiffs shown

that R.T.'s injury was proximately caused by and foreseeable as a result of Defendants' actions. As such, Plaintiffs present the Court with little more than "speculation, guesses, or conjectures" insufficient to take this case from the jury. *See Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 69, 414 S.E.2d 339, 345 (1992) (internal citations omitted).

A. Plaintiffs have provided no uncontested evidence that Defendants breached their duty to keep their premises in "reasonably safe" condition and warn of "hidden dangers or unsafe conditions."

Plaintiffs' only evidence that Defendants breached their duty to keep the Kohl's store in a reasonably safe condition is the fact that when the Plaintiff, who was running through the store, tripped and fell on his mother's cart, he landed on an empty display arm as opposed to one stocked with merchandise. This fact alone is not sufficient to show that Defendants breached their duty.

The arm Plaintiff landed on is not sharp. (Tayson Dep. 45:11-19.) At most, bumping into it would leave a mark. (*Id.*) Given the minimal danger posed by the arm, the mere fact that it was bare cannot be said to provide evidence of Defendants' failure to maintain their premises in a reasonably safe condition. Plaintiffs have presented no testimony regarding when the arm R.T. landed upon became empty. Given this lack of evidence, a reasonable finder of fact could conclude that the arm had been empty for a long period of time, or a short one. It is possible that the arm was emptied of merchandise mere minutes before the accident. The failure to restock merchandise within minutes of its removal is not required to maintain a "reasonably" safe premises. "The plaintiff bears the burden of showing that a dangerous condition existed for such a period of time that the defendant through the exercise of reasonable care should have known of its existence." *Thompson v. Wal-Mart Stores, Inc.*, 138 N.C.App. 651, 654, 547 S.E.2d 48, 50 (2000). Of course, this presumes that the arm is a dangerous condition – which the record does not support. The

8

Case 7:08-cv-00129-BO    Document 64    Filed 10/01/2009    Page 8 of 14

fixture was in plain sight, and, again, the testimony is that the arm was not sharp. (Tayson Dep. 45:11-19.)

It is worth noting that the law does not impose strict liability on premises owners, only requires that they maintain "reasonably" safe premises. To that end, it is not sufficient for Plaintiff to point to a violation of Defendants' internal safety policies – that there should be no empty arms on display racks – as conclusive evidence of Defendants' negligence. *Klassette v. Mecklenburg County Area Mental Health*, 88 N.C. App. 495, 501, 364 S.E.2d 179, 183 (1988) ("voluntary written policies and procedures do not themselves establish a *per se* standard of due care"); *Herring v. Food Lion LLC*, 175 N.C. App. 22, 29, 623 S.E.2d 281, 285 (2005) ("A purported and unproven breach of a property owner's or tenant's internal safety policy or manual is not evidence of a breach of a duty by defendant to any plaintiff who is injured on defendant's premises, even though a breach may have been caused by a third party."). In short, Plaintiffs' main evidence of a purported breach is simply, *post hoc ergo propter hoc*, that R.T. was injured on a fixture. Indeed, had R.T. missed the arm and fell directly upon the floor of the Kohl's, or hit a doorknob or any other obstruction, his injuries could have been as severe.

In short, Plaintiffs have not shown that Defendants failed to maintain a reasonably safe premises, as there is no evidence that the fixture would qualify as a dangerous condition, and even if it did, there is no evidence as to when Defendants knew, or should have known, that the particular dangerous condition complained of arose, thus giving rise to a duty to warn on the part of Defendants.

B.    Plaintiffs have provided no uncontested evidence showing that R.T.'s injury was proximately caused by a breach of Defendants' duty.

As discussed *supra*, the evidence shows that Plaintiff R.T. was running and playing in the Kohl's store, tripped over his mother's cart, and landed on the empty arm of the display fixture.

Plaintiffs claim that the arm – not Ms. Talbot – was the proximate cause of R.T.'s injury. Even if the empty arm were to be found a breach of Defendants' duty to maintain a reasonably safe premises for its lawful visitors, Plaintiffs have presented no evidence that the empty arm – rather than the actions of Ms. Talbot – caused the injury, or that the type of injury sustained was reasonably foreseeable.

The evidence shows that the safety rationale for stocking the fixtures is to make them more visible – that is, to make sure that customers see the fixture, and do not run into it. A picture of the accident location shows that the fixture had only one arm without merchandise, and was otherwise fully stocked. (*See* photograph of accident site, attached hereto as Exhibit "C.") It would be reasonably foreseeable, then, that a customer or employee could have run into a totally empty fixture. It might even be reasonably foreseeable that a customer or employee might run into a fixture with a bare arm, not seeing that portion of the fixture. However, it is simply not foreseeable that a falling person might be more likely to land on a bare arm of a fixture than on a stocked arm of a fixture. Even if R.T. did not see the fixture (and there is no evidence in the record regarding whether he saw the fixture or not, as Defendants have been prevented, by Plaintiffs' actions, from taking R.T.'s deposition), Plaintiffs have presented no evidence that the bare arm contributed to R.T.'s injury in any way, other than R.T. happening to land on the arm. Any other obstruction landed upon – including the floor – would have had the same contribution to causation of the injury.

Because R.T. landed on the arm – as opposed to running into it – whether or not the arm had clothes on it is irrelevant. Plaintiffs do not claim that R.T. did not see the display arm because it was empty – they claim he injured himself on the arm because it was empty. However, even if the arm had been stocked with merchandise, R.T. still would have landed on

the arm, just as he did when the arm was bare. Plaintiffs have presented no evidence to the Court that the emptiness of the arm caused the injury – in other words, that R.T. would not have been injured if the arm had not been bare, or that his injury would have been less severe had the arm been stocked with merchandise.[3]

Finally, Plaintiff Ms. Talbot has testified that R.T. tripped over her cart while she was in control of the cart. (*See* Talbot Dep. 46:15-17, 49:7-56:16, Stoner Dep. 48:3-6 ("I asked what— you know, "Is he okay? What happened?" And [Ms. Talbot] very nonchalantly said, "Oh, he was just running around and tripped on a cart and hurt himself.").) If anything is the proximate and actual cause of R.T.'s injury, it is, simply put, the intervening and superseding negligent actions of his mother, who failed to use reasonable care in operating her shopping cart, causing her son to fall, land on the empty arm, and injure himself. In any event, this issue of proximate causation is a factual determination for the jury. *Tabor v. Kaufman*, 675 S.E.2d 701, 703 (N.C. Ct. App. 2009) (whether intervening negligence of another insulates original actor from liability an issue for jury). It would be improper for the Court to make this factual determination at this time, especially given the overwhelming evidence that the most direct cause of R.T.'s injury was not Kohl's bare display arm, but his mother.

Because Plaintiffs have not presented undisputed facts to the Court proving that Defendants' purported breach of their duty proximately caused R.T.'s injury, Plaintiffs are not entitled to summary judgment against Defendants, and the Court should deny Plaintiffs' Motion.

---

[3] Less severe than the actual injury, which required no hospitalization and has resulted in no ongoing pain or disability. (*See* Talbot Dep. Talbot Dep. 66:20-71:3, 103:4-8.)

## PLAINTIFFS' CONTRIBUTORY NEGLIGENCE IS AN OPEN ISSUE

Plaintiffs next contend that they are entitled to summary judgment on Defendants' affirmative defense of contributory negligence. As an initial matter, Federal Rule of Civil Procedure 56 does not contemplate judgment be issued separately on an affirmative defense; rather, Rule 56 appears to direct that summary judgment be granted only on a "claim," or for a "party claiming relief." FED. R. CIV. P. 56. Any determination on the defense of contributory negligence would be subsumed into the Court's inquiry into whether summary judgment on Plaintiff R.T.'s negligence claim is warranted.

Plaintiffs' argument on why contributory negligence does not apply is, in essence, that because R.T. is presumed incapable of contributory negligence, the court should look to a child of like age, experience, and intelligence in determining capacity for negligence. However, because R.T. is mentally challenged, Plaintiffs argue that he is therefore incapable of contributory negligence. Plaintiffs provide no cases to support this claim, simply stating, without authority, that R.T. cannot be capable of contributory negligence. This is simply not the case. As Plaintiffs admit, when the incident occurred, R.T. was squarely in the rage of ages where a child can be capable of contributory negligence – although they are presumed to not be so.

However, the best evidence regarding R.T.'s contributory negligence is still unknown. Although Defendants have attempted to take R.T.'s deposition, he has refused, without justification or filing of a timely protective order, to attend. The testimony from Plaintiff Ms. Talbot is that her son tripped over her cart (Talbot Dep. 46:15-17, 49:7-56:16.), and other witnesses testified that Ms. Talbot said, just after the accident, that Plaintiff R.T. had been running and playing in the department store when he tripped and fell. (Stoner Dep. 48:3:6 ("I asked what—you know, "Is he okay? What happened?" And [Ms. Talbot] very nonchalantly

12

said, "Oh, he was just running around and tripped on a cart and hurt himself.").) Given this testimony, R.T.'s refusal to attend a deposition, and the pending motion for sanctions due to R.T.'s noncompliance with the Federal Rules, R.T.'s contributory negligence is still the subject of as-yet unknown material facts, and summary judgment in Plaintiffs' favor on this issue, and Plaintiffs' negligence proper, is not appropriate at this time.

## CONCLUSION

For the foregoing reasons, Defendants, Kohl's Department Stores, Inc. and Kohl's Corporation, request that this Court deny Plaintiffs' Motion for Partial Summary Judgment, and grant Defendants any additional relief to which the Court may deem them entitled.

Respectfully submitted, this the 1st day of October, 2009.

**SMITH MOORE LEATHERWOOD LLP**

By: /s/ Evan M. Sauda
C. Marshall Lindsay (N.C. Bar No. 25686)
Evan M. Sauda (N.C. Bar No. 32915
525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
(704) 384-2600 (telephone)
(704) 384-2800 (facsimile)
marshall.lindsay@smithmoorelaw.com
evan.sauda@smithmoorelaw.com
*Attorneys for Defendants, Kohl's Department Stores, Inc. and Kohl's Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2009, I electronically filed the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> David Paul Ennis
> david.ennis@enniscoleman.com
> *Attorney for Plaintiffs*

**SMITH MOORE LEATHERWOOD LLP**

By: /s/ Evan M. Sauda
    Evan M. Sauda
    *Attorney for Defendants*